### SANFORD DAIRY CO. v. SANFORD.

(Supreme Court, Appellate Division, Second Department. April 13, 1903.)

1. INJUNCTION PENDENTE LITE—SHOWING ON AFFIDAVITS.

Under Code Civ. Proc. § 604, authorizing an injunction pendente lite, where it appears by affidavit that defendant during pendency of the action is doing or about to do an act in violation of plaintiff's rights, such injunction should not be granted on plaintiff's affidavit showing attempts by defendant, the last three months before application for such injunction, to interfere with plaintiff's business, and defendant's uncontradicted affidavit that a month thereafter the parties agreed not to interfere with each other's business.

2. SAME—SHOWING IN COMPLAINT.

Code Civ. Proc. § 603, providing that where it appears from the complaint that plaintiff is entitled to a judgment restraining the commission or continuance of an act the commission or continuance of which during the pendency of the action would injure him he may have an injunction pendente lite, authorizes such an injunction only where the complaint shows that the acts are present continuing ones, or that there are threats or indications of the continuance.

Appeal from Special Term, Orange County.

Action by the Sanford Dairy Company against Milton L. Sanford. From an order granting plaintiff an injunction during the pendency of the action, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Henry Bacon (Joseph Merritt, on the brief), for appellant.

Edwin S. Merrill, for respondent.

HOOKER, J. On the 3d day of June, 1901, this defendant, Lansing H. Sanford, and Pierson E. Sanford, who is now the president of this plaintiff, entered into a written contract of copartnership, by the terms of which they agreed to conduct the business of dealing in milk, cream, and other dairy products, in the city of New York and elsewhere, under the firm name and style of P. E. Sanford & Co.; said copartnership agreement containing, among others, this provision:

"Upon the retirement of any partner upon the dissolution of said copartnership, by reason of the expiration of its term or otherwise, he shall not thereafter carry on the same kind of business in such a manner as to interfere with, draw any customers from, be in opposition to, or in any way hurt or damage, the business already established and carried on by said firm."

Subsequent thereto, and on January 1, 1900, the defendant, Milton L. Sanford, purchased from his copartner, Lansing H. Sanford, his entire interest in the business, and thereafter became and continued

until early in the year 1900 the general manager of the business of
the remaining partners. In the month of March, 1900, the defend-
ant, Milton L. Sanford, commenced an action against his sole co-
partner, Pierson E. Sanford, for the dissolution of said copartner-
ship, and thereafter an interlocutory judgment was entered in said
action, directing the sale of all the partnership property, including
the good will of the business, together with the right to enforce any
and all of the covenants and agreements contained in the co-part-
nership agreement quoted from. On the 11th day of August, 1900,
said property was sold to Pierson E. Sanford, the defendant in that
action, subject to all the terms and conditions of said judgment, for
the sum of $27,000, and the sale was thereafter in all respects duly
confirmed. Pierson E. Sanford continued said business for a time,
and thereafter transferred it to the plaintiff, which is now engaged in
the conduct and management thereof. The complaint alleges that
the defendant, after the sale under the judgment, became an officer of
the Sugar Loaf Dairy Company; that personally and as such officer
he commenced a course of conduct to interfere with the business of
the plaintiff company, and has been and is, personally and through
his corporation, interfering with and drawing away customers from
the plaintiff, and has thereby hurt and damaged the established busi-
ness of the plaintiff, which was sold under the judgment of dis-
solution to the plaintiff's assignor. The moving papers recite a
number of instances in which either the defendant or the Sugar
Loaf Dairy Company has offered to sell to plaintiff's customers, at
a lesser price than the plaintiff had been getting, by reason of which
plaintiff has been compelled to meet the lower figures; that the de-
fendant has, in a number of other instances, succeeded in taking
away plaintiff's customers from it altogether; and allege a continued
course of dealing whereby the defendant has sought to damage
plaintiff's business by complaints to the health department of the
city of New York, and by other acts intended to and actually causing
injury to the plaintiff and its business.

On these affidavits the plaintiff moved, on the 3d day of September,
1902, for an injunction pendente lite, restraining the defendant, either
himself or through any firm or corporation in which he might be
interested, from entering in any manner into competition with the
plaintiff, or carrying on the same kind of business in such manner as
to interfere with or draw away customers, or from being in opposi-
tion to or in any way hurt or damage the business established and
carried on by plaintiff and plaintiff's assignor, or the late firm of
P. E. Sanford & Co., and also from injuring, impairing, or destroy-
ing the good will of said business, and from personally or otherwise
soliciting, interfering, or dealing with the customers of the plaintiff.
An order was entered on the 12th day of September, 1902, restraining
the defendant in those terms, and from that order he appeals.

The affidavits read on the part of the defendant admit many of the
offenses charged in the moving papers, and show a course of conduct
on the part of the defendant by which he has continuously acknowl-
edged the right of the plaintiff corporation to the protection of the
quoted clause of the copartnership agreement of June 3, 1891, be-

tween himself, Lansing H. Sanford, and Pierson E. Sanford, and reveal the fact that defendant has considered himself bound to fulfill that agreement as to the plaintiff.  These affidavits show, however, that the defendant and his company have not been the only parties engaged in a severe competition in the milk business in the city of New York, but conclusively establish the fact that the plaintiff has adopted equally strenuous methods to injure the defendant and his company in their business of dealing in milk, for the purpose, no doubt, of protecting its own established business and acquiring new. Two of the affiants, whose affidavits were read in opposition to the motion, swear that after this warfare had existed between the plaintiff and the defendant and his company for a considerable period of time, and in the month of July, 1902, two of the officials of the plaintiff held a conference with them, with a view of discussing the competition between the two companies and the results thereof to both of them, and that several consultations and conversations took place on different dates, and finally an understanding was reached between the two companies "that both sides should call it 'quits' for the past, and let each other alone in the future," and that since that time there has been no intentional interference by either company with the other. This allegation of fact was not denied by the plaintiff in any manner, and it does not appear that it made any request for permission to file or read affidavits in reply.  Its charges of violation of the terms of the agreement of July 3, 1891, are for the most part vague and indefinite as to time, and refer, except in one instance, to incidents which occurred during the years 1900 and 1901.  The plaintiff's affidavits show that in the month of March, 1900, the defendant procured the health department of the city of New York to inspect the milk supplied by the plaintiff to the White Star Line, evidently for the purpose of injuring the reputation of the plaintiff as a fair dealer with that line; that generally, since the month of August, 1900, the defendant or his agents have solicited many of plaintiff's former employés and enticed them from its service; that on the 31st day of December, 1900, in a conversation with one of the officers of the plaintiff, defendant threatened to wreck the P. E. Sanford & Co. business; that during the winter of 1900 and 1901 the defendant endeavored to draw away from the plaintiff a customer known as the Bailey Restaurant Company, and as late as May of the latter year succeeded in part in depriving the plaintiff of the business of that restaurant company; that in the month of April, 1901, the defendant procured the establishment of a co-operative creamery in Delaware county, for the purpose of having the same "cut into the patrons of the plaintiff"; and, finally, that on or about the 1st day of June, 1902, the defendant called at the place of business of one Albers, plaintiff's customer, and offered that the Sugar Loaf Dairy Company would sell him milk at a price lower than he was paying at that time, and to meet that competition plaintiff was compelled to and did reduce the price of milk to Albers accordingly.

This synopsis of the facts disclosed the fact that commencing with the year 1900, and through the year 1901, the defendant evidently was making serious efforts to interfere with the plaintiff's enjoyment

of its established business; but it nowhere appears that he has continued this course of action during the year 1902, except in the single instance of his dealings with Albers, on the 1st of June, 1902.

If the injunction was granted under the provisions of section 604 of the Code of Civil Procedure, it cannot stand. That section reads as follows:

"Where it appears, by affidavit, that the defendant, during the pendency of the action, is doing, or procuring, or suffering to be done, or threatens, or is about to do, or to procure, or suffer to be done, an act, in violation of the plaintiff's rights, respecting the subject of the action, and tending to render the judgment ineffectual, an injunction order may be granted to restrain him therefrom."

The plaintiff has failed to make out a case under that section, for it nowhere appears that the defendant, during the pendency of the action, is doing or procuring or suffering to be done, or threatens or is about to do, any of the acts which form the basis of plaintiff's complaint. On the other hand, it affirmatively appears by defendant's affidavits, and stands uncontradicted, that in the month of July, 1902, two months before the granting of this injunction, an agreement was entered into between the plaintiff and defendant's company, whereby both sides agreed to make peace, and to refrain from interfering either with the other thenceforth. No violation of this agreement has been shown. If the injunction was granted under section 603 of the Code of Civil Procedure, this agreement and its fulfillment by both sides to the controversy bring the case well within the rule in Sleicher v. Grogan, 43 App. Div. 213, 59 N. Y. Supp. 1065. Mr. Justice Herrick, speaking for the court, there said:

"There is nothing, then, to indicate to us that, at the time this action was commenced, the acts complained of were present continuing acts, or that there were any threats or indications of their continuance or perpetration in the future; and, so far as the evidence shows, the last act upon the part of the defendants, which would constitute an interference with the plaintiff's business, was committed in the month of August, 1898 (about three months before the injunction was granted); and in the absence of any recent manifestation of violence or intimidation, or any evidence of their present existence or future perpetration, I do not think that an injunction pendente lite should be granted."

It should be understood that we express no opinion whatever upon the merits of this controversy, and in deciding this motion are confined strictly to the facts appearing in the affidavits printed.

The order appealed from should be reversed, with $10 costs and disbursements, and the injunction dissolved, without prejudice, however, to the right of the plaintiff to renew its motion for an injunction, if the defendant's acts at any time during the pendency of this action warrant judicial interference, as the plaintiff may be advised. All concur.